**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MALLORY KIRKLAND et al., *individually and behalf of all others similarly situated,*<br><br>Plaintiff<br><br>v.<br><br>JAMES H. CUNNINGHAM INSURANCE AGENCY, INC. d/b/a CUNNINGHAM GROUP,<br><br>Defendant | Case No. 25-cv-10730<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Mallory Kirkland, Dorzanna Defalco, and Carmella Millsaps (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, sue Defendant James H. Cunningham Insurance Agency, Inc. d/b/a Cunningham Group ("Cunningham" or "Defendant"). Cunningham moves to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [22] at 1. Where the Court lacks subject matter jurisdiction over Plaintiffs' claims, Cunningham's motion to dismiss is granted.

## I. Background

The following factual allegations taken from the Amended Complaint are accepted as true for purposes of the motion to dismiss. *See Lax v. Mayofrkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Cunningham is a large insurance agency that specializes in

medical malpractice coverage for physicians and healthcare practices. [13] at ¶¶ 2, 17. Plaintiffs are former patients of Cunningham's clients. *Id.* at ¶ 36, 53, 70. As a medical malpractice insurance agency Cunningham stores sensitive data, including personally identifiable information ("PII") and protected health information ("PHI") (collectively, "private information"). *Id.* at ¶ 3. For eight days in September 2024 an unauthorized party gained access to Cunningham's network, and Plaintiffs allege, upon information and belief, that this cybersecurity incident compromised the private information of Cunningham's clients and their patients, "including but not limited to names, dates of birth, financial account numbers, health information and Social Security numbers." *Id.* at ¶ 5. Plaintiffs allege Cunningham informed them in August 2025 that the unauthorized party "may have acquired certain files" that contained their "name in combination with [their] date of birth and health information." *Id.* at ¶ 28 (citing Exhibit A attached to Kirkland's original complaint ([1], Exhibit A)).[1]

Plaintiffs allege "on information and belief [that their] Private Information, including but not limited to [their] name, date of birth, and health information, has already been published—or will be published imminently—by cybercriminals on the Dark Web." *Id.* at ¶ 35. All three Plaintiffs allege they have experienced "anxiety, sleep disruption, stress, fear, and frustration," as they "worry about what information was exposed in the Data Breach." *Id.* at ¶¶ 46, 47, 63, 64, 80, 81. As a result of those concerns, Plaintiffs have spent time monitoring their accounts and "anticipate[ ] spending considerable amounts of time and money to try and mitigate [their]

---

[1] Although Plaintiffs refer to Exhibit A in their Amended Complaint, they failed to attach it. The Court has relied on Exhibit A attached to the original Complaint.

injuries." *Id.* at ¶ 44, 51, 61, 68, 78, 85. Plaintiffs Kirkland and Millsaps allege that in the time since the data breach they have experienced "suspicious robocalls and spam texts, suggesting [their] PII has been placed in the hands of cybercriminals." *Id.* at ¶¶ 45, 79. Plaintiffs allege they have suffered "actual injury in the form of damages to and diminution in the value of [their] Private Information," and "imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft for [their] lifetime[s]." *Id.* at ¶¶ 49, 50, 66, 67, 83, 84.

Ultimately, Plaintiffs allege that their private information was compromised because "Defendant has not implemented reasonabl[e] cybersecurity safeguards." *Id.* at ¶ 22. Accordingly, Plaintiffs, on behalf of themselves and others similarly situated, bring eight causes of action against Cunningham and seek injunctive relief and damages. *Id.* at 26-48. Cunningham moves to dismiss the Plaintiffs' Amended Complaint under Rules 12(b)(1) and 12(b)(6). [22] at 1. For the reasons stated herein, the motion is granted.

## II. Standard

A motion to dismiss pursuant to 12(b)(1) challenges the Court's subject matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023).

Standing is an "essential component of Article III's case-or-controversy requirement," and therefore a "threshold jurisdictional question." *Apex Dig., Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009) (citing L*ujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). Article III standing has three components: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338, (2016) (citing *Lujan*, 504 U.S. at 560–61). An injury in fact must be "concrete and particularized" and "actual or imminent, not 'conjectural or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Standing must be established for each type of relief sought. *See Trans Union LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("standing is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim they press and for each form of relief they seek"). "A plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized." *Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934, 938 (7th Cir. 2022). To establish standing to seek injunctive relief, a plaintiff must allege "an actual or imminent threat of suffering a concrete and particularized 'injury in fact.'" *Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019); s*ee also Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) ("Because an injunction is a forward-looking remedy, a plaintiff seeking this form of relief has standing to sue for an alleged future injury only if 'the threatened injury is "certainly impending," or there is a "substantial risk" that the

harm will occur.'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014))). "'[P]ast injury alone is insufficient,' as is a threat of injury that is 'merely conjectural or hypothetical.'" *Swanigan*, 881 F.3d at 583 (citing *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017)). As the proponent of federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Spokeo,* 578 U.S.at 338.

## III. Analysis

Cunningham argues Plaintiffs' Complaint should be dismissed where it fails to set forth an injury-in-fact. [23] at 3-8. Plaintiffs allege they have suffered concrete injuries and face a risk of future injuries, all of which are sufficient to confer standing. However, there is nothing in the Amended Complaint to show Plaintiffs have suffered a concrete injury, and Plaintiffs fail to show that any risk of future harm is "substantial" or "certainly impending." *See Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)) (for purposes of the injury-in-fact requirement, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur"). Instead, Plaintiffs rely on a speculative and attenuated chain of possibilities to connect the data breach to potential future harm. As such, Plaintiffs' allegations are simply too speculative to confer standing. *See Whitmore,* 495 U.S. at 158 ("[a]llegations of possible future injury" are not sufficient to confer standing).

As noted above, standing must be established as to each form of relief sought. Here, Plaintiffs seek both damages and injunctive relief. The Court addresses each in turn. A plaintiff has standing to sue for money damages only for injuries that have

already occurred. *See Pierre*, 29 F.4th at 938. Here, Plaintiffs allege Cunningham's data breach has injured them in five respects: (1) the value of their private information has decreased; (2) they have experienced anxiety associated with the breach; (3) they lost the benefit of their bargain with Cunningham; (4) two Plaintiffs have experienced an increase in spam calls; and (5) all three Plaintiffs have spent time monitoring their financial accounts. [13] at 8-14.

First, Plaintiffs allege they have suffered "actual injury in the form of damages to and diminution in the value of [their] Private Information." *Id.* at ¶¶ 49, 66, 83. The Seventh Circuit has found this theory of standing "abstract" and "problematic." *See Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (plaintiffs' allegation "that they have a concrete injury in the loss of their private information, which they characterize as an intangible commodity," too "abstract" to confer standing). Other courts have rejected this theory where plaintiffs—like the Plaintiffs here—do not allege that they have ever sold or would ever sell their personal information. *See also Kylie S. v. Pearson PLC,* 475 F.Supp.3d 841, 849 (N.D. Ill. 2020) (citing *Clapper*, 568 U.S. at 401) (where Plaintiffs did not "plead that they have ever sold their data or that they would even consider doing so" their claim based on the diminution in value of their personal data was "'too speculative' to confer standing"); *In re SuperValu, Inc.,* 2016 WL 81792, at *7 (D. Minn. 2016) ("Assuming without deciding that Plaintiffs' PII had monetary value, Plaintiffs have failed to allege any facts explaining how their PII became less valuable as a result of the Data Breach.").

Plaintiffs' allegation that the data breach decreased the value of their personal information is not concrete injury-in-fact.

Next, Plaintiffs allege they have experienced "anxiety, sleep disruption, stress, fear, and frustration," as they "worry about what information was exposed in the Data Breach." [13] at ¶¶ 46, 47, 63, 64, 80, 81. But the Seventh Circuit has also rejected this theory of standing. *See Wadsworth v. Kross, Lieberman & Stone, Inc.,* 12 F.4th 665, 668-69 (7th Cir. 2021) ("anxiety and embarrassment are not injuries in fact;" "[t]hese are quintessential abstract harms that are beyond our power to remedy"); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) ("Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm."); *see also U.S. v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (noting that "purely psychological harm" does not suffice to establish Article III standing). Without more, Plaintiffs' allegations that they have experienced anxiety and stress in connection with the data breach are insufficient to demonstrate a concrete injury that confers standing to sue.

Plaintiffs also allege they lost the benefit of the bargain they made with Cunningham where their personal information was compromised despite their belief "that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of Private Information." [13] at ¶¶ 41, 58, 75. This theory has likewise been rejected by the Seventh Circuit and other courts. In *Remijas* the Seventh Circuit acknowledged its prior holdings that "financial injury in the form of an overcharge can support Article III standing," but noted that those cases primarily

involved products liability claims against defective or dangerous products. 794 F.3d at 695 (finding plaintiffs' apparent "unjust enrichment" theory of standing in a data breach case "problematic"). Plaintiffs in *Remijas*, by contrast, were suing Neiman Marcus in connection with a data breach—not because Neiman Marcus sold defective products—but because they sold "products at premium prices, but instead of taking a portion of the proceeds and devoting it to cybersecurity, the company pocketed too much." *Id*. The court stated it was "dubious" of this "problematic" theory of standing. *Id*; *see also Attias v. CareFirst, Inc.,* 365 F. Supp. 3d 1, 13 (D.D.C. 2019) (citations and quotation marks omitted) (rejecting the plaintiffs' theory that they had been denied the benefit of their bargain by "broadly alleg[ing] that some indeterminate amount of their health insurance premiums went towards providing data security" and "alleg[ing] only in a conclusory fashion that the services they received were of a diminished value"); *Dinerstein v. Google, LLC*, 484 F.Supp.3d 561, 591-92 (N.D. Ill. 2020) (same). Plaintiffs' claim here is even more questionable where Plaintiffs were patients of Cunningham's clients and did not pay Cunningham directly. Where, in other data breach cases, the Seventh Circuit and other courts have expressed skepticism or outright rejected this unjust enrichment theory of standing, the Court finds Plaintiffs' allegation likewise fails to confer standing.

Plaintiffs Kirkland and Millsaps allege they have been further injured where, in the time since the data breach, they have experienced "suspicious robocalls and spam texts." [13] at ¶¶ 45, 79. "Courts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact." *Cooper v. Bonobos, Inc.*, 2022 WL 170622,

at *5 (S.D.N.Y. 2022) (citing *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("[t]he receipt of spam by itself . . . does not constitute a sufficient injury entitling [the plaintiff] to compensable relief") and *Jackson v. Loews Hotels, Inc.,* 2019 WL 6721637, at *4 (S.D.N.Y. 2019) ("receiving spam or mass mail does not constitute an injury")). However, even assuming an increase in spam calls or texts constitutes an injury-in-fact for standing purposes, Plaintiffs have failed to plausibly trace their alleged injury to Cunningham's data breach.

The Fourth Circuit in *Holmes v. Elephant Insurance Company*, 156 F.4th 413, 420 n.3 (4th Cir. 2025), affirmed the district court's determination that a plaintiff failed to adequately allege traceability for standing purposes, where he claimed to receive "an uptick in spam texts and calls to his phone after the data breach," but did not "allege that the [data compromised] in [the b]reach included cell phone numbers." The court found this "straightforwardly defeats [plaintiff's] attempt to attribute his uptick in spam texts and calls to the data breach." *Id.* Likewise here, Plaintiffs do not allege that their phone numbers have been compromised. [13] at ¶¶ 5, 28, 35; *see also* [13] at ¶ 94 ("even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create [an information] package and sell it at a higher price to unscrupulous operators . . . That is exactly what is happening to Plaintiffs and Class Members."). As such, Plaintiffs cannot plausibly connect an increase in spam calls or texts to the data breach and therefore cannot demonstrate that their injury is traceable to Cunningham's conduct.

Finally, Plaintiffs seek damages for the time they have spent trying to mitigate any potential harm caused by the data breach. [13] at ¶¶ 44, 61, 78 (Plaintiffs "ha[ve] spent—and will continue to spend—significant time and effort monitoring [their] accounts to protect [themselves] from identity theft."). This allegation of previously-materialized injury is related to the question of whether Plaintiffs have standing to pursue injunctive relief for potential future injuries. Both require Plaintiffs to demonstrate they are at a substantial risk of identity theft. *See McMorris v. Carlos Lopez & Assocs.*, LLC, 995 F.3d 295, 303 (2nd Cir. 2021) (only "where plaintiffs have shown a substantial risk of future identity theft or fraud" may "any expenses they have reasonably incurred to mitigate that risk likewise qualify as injury in fact").

The Supreme Court has made clear that "allegations of possible future injury," or even an "objectively reasonable likelihood" of future injury, are insufficient to confer standing. *Clapper*, 568 U.S. 409-10 (internal quotation marks and emphasis omitted). Instead, a future injury constitutes an Article III injury-in-fact only "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List,* 573 U.S. at 158 (internal quotation marks omitted). In other words, no Article III standing exists if a plaintiff's theory of injury rests on an "attenuated chain of inferences necessary to find harm." *Clapper*, 568 U.S. at 414 n.5. Ultimately, the purpose of the imminence requirement is "to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).

Where a plaintiff fails to demonstrate a substantial risk that harm will occur, the plaintiff "cannot manufacture standing" by incurring costs to monitor or protect against the harm. *Clapper*, 568 U.S. at 416. Here, where Plaintiffs have not alleged a substantial risk of future identity theft, the time they have spent protecting themselves against this speculative threat cannot confer standing. First, it is unclear from the Amended Complaint whether Plaintiffs' personal information was, in fact, accessed and stolen in the data breach. Plaintiffs allege that "an unauthorized party had access to Defendant's network" for eight days in September 2024, which "compromised the Private Information of Defendant's current and former clients and their patients." [13] at ¶¶ 4-5. In the letter Cunningham sent to Plaintiffs, Cunningham stated that "an unknown, unauthorized party accessed Cunningham Group's network . . . and *may* have acquired certain files" that contained Plaintiffs' names, dates of birth, and health information. [1], Exhibit A (emphasis added). Plaintiffs suggest this is an admission from Cunningham "that Private Information was actually stolen from [their] systems." [13] at ¶ 28 (citing [1], Exhibit A). Even assuming that Plaintiffs' personal information was, in fact, accessed and extracted, their Complaint nonetheless fails to plausibly allege a substantial risk of identity theft.

Beyond their conclusory allegations that they face a "substantially increased risk of fraud, misuse, and identity theft for [their] lifetime[s]," *id.* at ¶¶ 50, 67, 84, Plaintiffs rely on general information about the sale of stolen private information, and broad statistics about cyberattacks and internet crime. *Id.* at 15-18. But "[t]hese

reports do nothing to clarify the risks to the plaintiffs *in this case*." *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1343 (11th Cir. 2021) (emphasis in original). Instead, Plaintiffs ask the Court to assume—without any specific allegations applicable to Plaintiffs or this data breach—not just that their data was stolen, but that unknown actors will sort, market, sell, and successfully weaponize that data. A future risk of injury that relies on this sort of "speculation about the decisions of independent actors" is not sufficient to establish a concrete injury. *Clapper*, 568 U.S. at 410-414.

Plaintiffs have also identified no instances of identity theft, fraud, or misuse of any data between September 2024—when the data breach occurred—and October 2025—when the Amended Complaint was filed. [13] at 4. Plaintiffs do not claim to have suffered from any misuse of their personal data, and do not identify any members of the prospective class who have experienced such harms. Though a plaintiff need not demonstrate the existence of present harms to show that the risk of future harm is substantial, it is nonetheless a relevant consideration. *See Kylie S. v. Pearson PLC*, 475 F.Supp.3d 841 (N.D. Ill. 2020) ("Plaintiffs' inability to identify any consequences of the data breach reinforces [the] conclusion" that "nothing in the complaint establishes that [the breach] expose[d] Plaintiffs to a substantial risk."); *Tsao,* 986 F.3d at 1340 ("Generally speaking, the cases conferring standing after a data breach based on an increased risk of theft or misuse included at least some allegations of actual misuse or actual access to personal data."); *see also In re U.S. Off. Of Per. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 58 (D.C. Cir. 2019) ("[A]

hacker's 'intent' to use breach victims' personal data for identity theft becomes markedly less important where, as here, several victims allege that they have already suffered identity theft and fraud as a result of the breaches."). Unlike the plaintiffs in *Remijas*, 794 F.3d at 693-94, and *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016), who had standing in pertinent part because their credit card information was stolen and fraudulent charges had already occurred, the Plaintiffs in this case have not suffered any present injuries to show the risk of future harm is substantial or certainly impending.

At best, then, Plaintiffs' allegations lead to a plausible inference that at some unknown time in the future, some of the putative class members may be the victim of identity theft or fraud. Even accepting as true Plaintiff's allegations about the nature of the breach—that it was an intentional attack by cybercriminals—Plaintiffs only plead facts showing there is a non-imminent risk of possible future injury. Thus, while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury where there is no imminent threat of harm. *See In re SuperValu, Inc.*, 870 F.3d at 769 (8th Cir. 2017) ("Because plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury."); *Reily v. Ceridian Corp.*, 664 F.3d 38, 46 (3rd Cir. 2011) ("costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts" were "not sufficient to confer standing"); *Tsao,* 986 F.3d at 1344-1345 (plaintiff "cannot conjure standing [ ] by inflicting injuries on himself to avoid an insubstantial,

non-imminent risk of identity theft”). Thus, where Plaintiffs have failed to demonstrate a substantial risk of identity theft, fraud, or misuse of their personal information, they have failed to demonstrate standing for damages associated with their mitigation efforts or for injunctive relief.

## IV. Conclusion

For the reasons stated above, the Court finds that Plaintiffs lack standing. As such, Defendant's motion to dismiss [22] is granted. If Plaintiffs believe they can amend their complaint to cure the deficiencies identified in the Court's ruling, Plaintiffs may seek leave to file an amended complaint by October 23, 2026. Plaintiffs' motion to file an amended complaint shall describe how the amended complaint cures these deficiencies.

E N T E R:

Dated: September 28, 2026

Mary M Rowland

MARY M. ROWLAND
United States District Judge